**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

ANGEL DIDIER DEAGUEROS MOTA,

                   Petitioner,

v.

TODD BLANCHE, Attorney General of the United States, in his official capacity, et al.,[1]

                   Respondents.

Case No.:  3:26-cv-01254-RBM-MSB

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

**[Doc. 1]**

Pending before the Court is Petitioner Angel Didier Deagueros Mota's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241.  (Doc. 1.) For the reasons below, the Petition is **DENIED**.

## I.    BACKGROUND

**A.    Factual Background**

Petitioner is a citizen of Mexico.  (Doc. 4-1 at 5.)  It is unclear when Petitioner entered the United States, but he "has lived in the United States since early childhood." (*Id.*; Doc. 1 ¶ 2.)  On October 27, 2004, Petitioner was convicted of kidnapping.  (Doc. 4-1 at 4.)  On January 19, 2005, an immigration judge ordered Petitioner removed from the United States to Mexico.  (*Id.* at 5.)  The next day, Petitioner was physically removed to Mexico.  (*Id.*)

---

[1] Todd Blanche is automatically substituted pursuant to Federal Rule of Civil Procedure 25(d).

Subsequently, Petitioner re-entered the United States without being admitted or paroled. (*See id.*) On March 31, 2025, Petitioner was arrested on a criminal arrest warrant for a violation of 8 U.S.C. § 1326. (*Id.*) On April 3, 2025, the United States District Court for the Central District of California granted Petitioner a bond. (*Id.*) "As a result, an I-247 detainer was lodged." (*Id.*) On April 4, 2025, Petitioner was taken into custody of the Department of Homeland Security ("DHS") and served with a Notice of Intent/Decision to Reinstate Prior Order. (*Id.*; Doc. 4-1 at 8.) DHS "reinstated [Petitioner's] prior removal order under 8 U.S.C. § 1231(a)(5)." (Doc. 1 ¶ 3.)

Petitioner then expressed a fear of returning to Mexico. (*Id.*) DHS found that Petitioner did not have a reasonable fear, and the immigration judge affirmed this finding. (*Id.*) On April 29, 2025, Petitioner filed a petition for review to the Ninth Circuit, challenging DHS's reinstatement of his final removal order. (*See* Doc. 7 at 1; Doc. 8 at 2.) Specifically, Petitioner argues that (1) "DHS did not meet its burden of proof, by clear and convincing evidence, that [he] had departed the United States under a final order of removal and that he had subsequently reentered the United States without having been admitted;" (2) "his counsel was not served with DHS's decision to reinstate the prior order of removal;" and (3) "the reinstatement of removal process is arbitrary and capricious." (*See* Doc. 5-1 at 3 (Petition for Review of Final Order of Removal).) The Ninth Circuit issued a stay of removal on April 30, 2025. (Doc. 1 ¶ 4.) Despite that stay, DHS mistakenly removed Petitioner to Mexico later that same day. (Doc. 4 at 2.) Following further litigation, Petitioner was paroled back into the United States in August 2025 and returned to immigration custody. (Doc. 1 ¶ 4.) The petition for review is still pending before the Ninth Circuit. (*See* Doc. 7 at 1; Doc. 8 at 2.) Petitioner has not received a bond hearing since he last entered immigration custody. (*See* Doc. 1 ¶ 30.)

**B.    Procedural Background**

Petitioner filed his Petition on February 26, 2026. (Doc. 1.) The next day, the Court set a briefing schedule. (Doc. 2.) Respondents filed their Return to Petition ("Response") on March 6, 2026. (Doc. 4.) Petitioner filed his Traverse to Return to Petition ("Reply")

2

on March 12, 2026.  (Doc. 5.)  On March 24, 2026, the Court ordered further briefing regarding: (1) the subject of Petitioner's petition for review; and (2) the statutory authority governing Petitioner's detention in light of the Ninth Circuit stay of removal and decision in *Prieto-Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2008).  (Doc. 6 at 2–3.)  Respondents filed their Supplemental Brief on April 2, 2026.  (Doc. 7.)  Petitioner filed his Supplemental Brief the same day.  (Doc. 8.)

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions."  28 U.S.C. § 2241(a).  The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."  *Id.* § 2241(c)(3).

## III.    DISCUSSION

Petitioner initially argued that his detention without a bond hearing violates the Fifth Amendment's Due Process Clause.  (Doc. 1 ¶¶ 38–57.)  Respondents initially argued that Petitioner is subject to a final removal order and thus mandatorily detained under 8 U.S.C. § 1231.  (Doc. 4 at 3–6.)  The Parties also initially agreed that Petitioner was subject to § 1231.  (*See id.*; Doc. 1 ¶ 6.)  The Court then ordered further briefing.  In his Supplemental Brief, Petitioner argued that when a court of appeals stays a removal order "pending judicial review, the governing detention statute is 8 U.S.C. § 1226(a) rather than 8 U.S.C. § 1231."  (Doc. 8 at 3, 4–6 (discussing *Prieto-Romero*).)  In their Supplemental Brief, Respondents argued that *Prieto-Romero* does not control because Petitioner's petition for review "is limited to a review of DHS's reinstatement of [his] 2005 removal order" and "does not challenge the validity of the underlying removal order itself."  (Doc. 7 at 2–3.)

3:26-cv-01254-RBM-MSB

As the statutory provision governing Petitioner's detention determines the procedures Respondents must follow, the Court will address this issue first.

**A.     Detention Under § 1226 or § 1231**

Here, Petitioner has a removal order that was reinstated and is administratively final, but has been stayed by the Ninth Circuit pending its disposition of his petition for review. (Doc. 4-1 at 5; Doc. 1 ¶¶ 3, 4.)  Accordingly, the question is whether Petitioner's detention is governed by § 1226 or § 1231.

**1.     Section 1231(a)**

"Congress has created an expedited process for [noncitizens] who reenter the United States without authorization after having already been removed."  *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021).  That process states:

> If the Attorney General finds that [a noncitizen] has reentered the United States illegally after having been removed . . . , under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the [noncitizen] is not eligible and may not apply for any relief under this chapter, and the [noncitizen] shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5).

Section 1231(a)(5) "applies to 'all illegal reentrants,' and it 'explicitly insulates the removal orders from review,' while also 'generally foreclos[ing] discretionary relief from the terms of the reinstated order."  *Johnson*, 594 U.S. at 530 (quoting *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 35 (2006) (alteration in original)).  However, a circuit court still has "jurisdiction to review certain challenges to the reinstatement proceedings and orders." *Bravo-Bravo v. Garland*, 54 F.4th 634, 637 (9th Cir. 2022), *abrogation on other grounds recognized by Suate-Orellana v. Garland*, 101 F.4th 624 (9th Cir. 2024).

"First, the [noncitizen] may challenge errors or defects in the reinstatement proceedings or reinstatement order."  *Id.* at 638 (citing *Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1137 (9th Cir. 2008)).  In this type of challenge, "a petitioner cannot raise a due process challenge to an underlying removal order, and *review*

4

*of the reinstatement itself is limited to confirming the agency's compliance with the reinstatement regulations.*" *Garcia de Rincon*, 539 F.3d at 1137 (emphasis added).

"Second, the [noncitizen] may collaterally attack *the removal order underlying the reinstatement order*, provided that the [noncitizen] can claim there was a gross miscarriage of justice in the proceedings resulting in the underlying removal order." *Bravo-Bravo*, 54 F.4th at 637 (citing *Cuenca v. Barr*, 956 F.3d 1079, 1082 (9th Cir. 2020)) (emphasis added). If the appellate court "determines there was a gross miscarriage of justice, the *removal order cannot be reinstated*, although the [petitioner] may be subject to a new order of removal." *Perez-Camacho v. Garland*, 54 F.4th 597, 605 (9th Cir. 2022) (citing *Vega-Anguiano v. Barr*, 982 F.3d 542, 551 (9th Cir. 2019)) (emphasis added).

Third, the noncitizen may pursue "withholding-only relief to prevent DHS from executing his removal to the particular country designated in his reinstated removal order." *Johnson*, 594 U.S. at 530. A petitioner who brings this type of challenge is governed by § 1231 and not entitled to a bond hearing under Supreme Court precedent. *Id.* at 526.

### 2. Section 1226(a)

"A non-citizen who is seemingly detained under 8 U.S.C. § 1231(a) based on a final order of removal—where administrative review is complete, but removal is stayed by the court of appeals pending review of the case—is treated as if detained under 8 U.S.C. § 1226(a)." *Hernandez-Castro v. Lyons*, Case No. 1:25-CV-01574 JLT SAB, 2025 WL 3771344, at *9 (E.D. Cal. Dec. 31, 2025). "Put differently, when the appellate court issues a stay, the [noncitizen] may not be detained under any subsection of § 1231(a) unless and until the court finally denies the [noncitizen's] petition for review." *Id.* at *10 (citing *Prieto-Romero*, 534 F.3d at 1060).

That language, however, is not as sweeping as Petitioner argues. First, the stay must relate to an appellate court's judicial review of the removal order itself, not a determination regarding credible fear or withholding of removal. *See Escobar v. Bondi¸* Case No. 3:26-cv-00197-RBM-MSB, 2026 WL 473046, at *2 (S.D. Cal. Feb. 19, 2026) (citations omitted); *Johnson*, 594 U.S. at 526. Second, the petition for review, if granted, must be

3:26-cv-01254-RBM-MSB

capable of disturbing the validity of the final removal order.  These are the lessons of *Johnson v. Guzman Chavez* and *Prieto-Romero v. Clark*.

In *Johnson*, the Supreme Court was "asked to decide [whether § 1226 or § 1231] applies to [noncitizens] who were removed from the United States but later reentered without authorization, were subject to reinstated orders of removal, and then sought withholding of removal based on fear of persecution in the particular countries designated by their removal orders."  594 U.S. at 526.  In deciding that § 1231 applied, the Supreme Court reasoned "that removal orders and withholding-only proceedings address two distinct questions.  As a result, they end in two separate orders, and the finality of the order of removal does not depend in any way on the outcome of the withholding-only proceedings."  *Id.* at 539 ("the grant of withholding relief under CAT 'does not disturb the final order of removal,' 'affect the validity of the final order of removal,' or otherwise 'merge into the final order of removal'") (quoting *Nasrallah v. Barr*, 590 U.S. 573, 582 (2020)).  It is therefore clear that *Johnson*'s holding is grounded in the fact that a petition for review regarding withholding of removal may prevent removal to a particular country, but does not prevent a final order of removal from being issued.  *See also Padilla-Ramirez v. Bible*, 882 F.3d 826, 832 (9th Cir. 2017) ("This narrow question of *to where* [the noncitizen] may be removed is distinct from the broader question of *whether* the [noncitizen] may be removed.") (emphasis in original).

In *Prieto-Romero*, the Ninth Circuit held that "when a court of appeals issues a stay of removal pending its decision on [a noncitizen's] petition for review of his removal order, the removal period begins only after the court denies the petition and withdraws the stay of removal."  534 F.3d at 1059.  This is because "[i]t is reasonable to consider the judicial review of a removal order as part of the process of making an ultimate 'decision' as to whether [a noncitizen] 'is to be removed.'"  *Id.* at 1062.  In other words, the petitioner's removal order is not final under these circumstances until the appellate court rules on the petition for review.

6

3:26-cv-01254-RBM-MSB

### 3.     Analysis

Here, Petitioner's appeal concerns reinstatement of his removal order, not any determination regarding withholding-only proceedings.  (*See supra* Section I.A.)  It does not challenge the removal order underlying his reinstatement order, nor does it raise a "gross miscarriage of justice" claim.  *See Bravo-Bravo*, 54 F.4th at 637.  Therefore, the Ninth Circuit's review will be "limited to confirming the agency's compliance with the reinstatement regulations."  *Garcia de Rincon*, 539 F.3d at 1137; *see also Bible*, 882 F.3d at 830.  Even assuming Petitioner succeeds at the Ninth Circuit, his petition for review will not "affect the validity of the final order of removal."  *Johnson*, 594 U.S. at 539.  And unlike the petitioners in *Prieto-Romero*, Petitioner already has a final order of removal.  (*See* Doc. 4-1 at 5 ("On January 19, 2005, an Immigration Judge . . . ordered [Petitioner] removed from the United States.").)  His petition for review may result in the invalidation of his reinstatement order, but it will not affect his underlying removal order.  He is not within the class of petitioners contemplated by *Prieto-Romero* and is thus subject to § 1231(a).

### B.     Relief under § 1231

As such, Petitioner is not statutorily entitled to a bond hearing.  *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 581 (2022) ("there is no plausible construction of the text of § 1231(a)(6) that requires the Government to provide bond hearings before immigration judges after six months of detention").  Petitioner argues, though, that even under § 1231 he is entitled to relief under *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not significantly likely in the reasonably foreseeable future.  (Doc. 8 at 7–8; Doc. 1 ¶¶ 31–44.)  Respondents argue that "Petitioner cannot show he faces an 'indefinite and potentially permanent' detention" because his appellate "proceedings have a definite ending point," after which Petitioner may be removed.  (Doc. 5 at 5–6 (quoting *Zadvydas*, 533 U.S. at 696).)

The Supreme Court has recognized a six-month presumptively reasonable period of detention after a noncitizen's removal order becomes final.  *Zadvydas*, 533 U.S. at 701.

"After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* The Court finds that Respondents have the better argument here.

> In the typical *Zadvydas* case, the government is unable to remove the [noncitizen] because the country of removal refuses to accept them or to provide travel documents. That is not the case here. . . . Indeed, [Petitioner] was removed [to Mexico] in [2005 and] . . . the sole obstacle removal appears to be the pending appeal. . . . That alone does not render removal unforeseeable under *Zadvydas*. *See Prieto-Romero*, 534 F.3d at 1062 (holding that Mexican national "faces a significant likelihood of removal in the reasonably foreseeable future because the government can repatriate him to Mexico if his pending bid for judicial relief from his administrative final removal order proves unsuccessful").

*Hurtado-Romero v. Sessions*, 2018 WL 2234500, at *4 (N.D. Cal. May 16, 2018); *see also Bermudez v. Gonzalez*, No. CV F 07-00807 LJO DLB HC, 2007 WL 2913938, at *5 (E.D. Cal. Oct. 4, 2007) (denying *Zadvydas* claim because "[a]lthough the Ninth Circuit has ordered a stay of Petitioner's removal pending review of the petition, once the stay is lifted, the agency is free to remove him").

### IV.    CONCLUSION

Because Petitioner is subject to § 1231(a) and there is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future, the Petition (Doc. 1) is **DENIED without prejudice**.

    **IT IS SO ORDERED.**

DATE:  April 10, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

3:26-cv-01254-RBM-MSB